**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:14cv490-FDW**

| | | |
|---|---|---|
| **JAQUAN RESEAN WEATHERS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **KEITH WHITNER, Warden,** | ) | |
| **Marion Correctional Institution,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

     **THIS MATTER** is before the Court upon initial review of Jaquan Resean Weathers' pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, ECF No. 1. <u>See</u> Rule 4 of the Rules Governing Section 2254 Cases, 28 U.S.C.A. foll. § 2254. For the reasons that follow, Petitioner's § 2254 petition will be denied and dismissed.

**I.    BACKGROUND**

     Petitioner is a prisoner of the state of North Carolina after his conviction by a Mecklenburg County Superior Court jury of one count of first-degree murder and three related counts of kidnapping. <u>State v. Weathers</u>, 724 S.E.2d 114, 115 (N.C. App. 2012). Judgment was entered on March 11, 2011, and Petitioner was sentenced to life imprisonment for the first-degree murder conviction. Pet. 1, ECF No. 1. Sentences also were imposed for the three counts of kidnapping to run concurrently with the life-sentence. Pet., <u>supra</u>, at 1.

     Petitioner appealed to the North Carolina Court of Appeals. The court summarized the factual and procedural history of the case:

> The [home] of the victim[ Leroy Hodge, Jr., a.k.a. "Rico"] was commonly the site of illegal drug sales and use, particularly crack cocaine. On the night of the murder, Johnny Wilson had been selling crack from the victim's home before leaving to visit a friend. When Wilson returned, he entered the apartment and saw

1

Defendant waving a gun around. Defendant was upset and angry because he believed someone had taken his drugs. As Wilson stood in the kitchen, he heard a gunshot from the bedroom. When Wilson entered the bedroom, he saw Rico lying on the floor and Defendant standing with his back to the wall.

Wilson was one of the State's chief witnesses at trial. During his direct examination on 28 February 2011, Wilson was shaking while testifying about Defendant's involvement in the murder. When he returned to the stand on 2 March, he "began to testify, but within a few minutes became distraught and indicated he did not wish to make any other statements." Wilson was shaking more noticeably than he had been on 28 February, and laid his head down on top of the witness stand and began to cry. Wilson became even more upset when a young man dressed in street clothes entered the courtroom. When asked if he had been threatened, Wilson responded, "I don't even want to answer that question."

In light of Wilson's extreme emotional state, the trial court excused Wilson from testifying further. At the prosecution's request, the court called a hearing on the issue of whether the doctrine of forfeiture applied to the circumstances and whether Wilson's testimony would remain on the record. Defendant argued that the appropriate remedy was to declare a mistrial because he had been denied the right to confront Wilson. By order entered 11 March 2011, the court directed that Wilson's testimony remain on the record. In the order, the trial court found that Defendant had "committed wrongful acts that were undertaken with the intention of preventing potential witnesses from testifying and has in fact caused a potential witness, Johnny Wilson, to refuse to testify."

Weathers, 724 S.E.2d at 115. The Court of Appeals affirmed Petitioner's convictions, and Petitioner filed a petition for writ of certiorari in the North Carolina Supreme Court, which was denied on June 12, 2013. State v. Weathers, 743 S.E.2d 203 (N.C. 2013). Petitioner did not seek review in the United States Supreme Court nor did he seek collateral relief in Mecklenburg County Superior Court. Instead, Petitioner filed the present federal habeas petition.

## II.     STANDARD OF REVIEW

The Court is guided by Rule 4 of the Rules Governing Section 2254 Cases, which directs district courts to examine habeas petitions promptly. Rule 4, 28 U.S.C.A. foll. § 2254. When it plainly appears from any such petition and any attached exhibits that the petitioner is not entitled to relief, the reviewing court must dismiss the motion. Id.

A federal court may not grant habeas relief under 28 U.S.C. § 2254 for any claim adjudicated on the merits by a state court unless that adjudication was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). This review of state court decisions on federal constitutional claims is a highly constrained one. "The question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was <u>unreasonable</u>—a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) (emphasis added). A state court decision is unreasonable "only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents.'" <u>Nevada v. Jackson</u>, 133 S.Ct. 1990, 1992 (2013) (per curiam) (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011)).

Furthermore, deference on habeas review is not limited to the state court's interpretation and application of Supreme Court precedents. The habeas court also must presume the correctness of the state court's factual findings, unless they are rebutted by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1).

## III.    DISCUSSION

Petitioner claims that his right to confront the witnesses against him was violated when the trial court refused to grant his motion for a mistrial after releasing Johnny Wilson from further testimony before Petitioner had a chance to cross-examine him.[1]  Pet. 6, ECF No. 1.

---

[1] Petitioner also asserts that the trial court erred in denying his motion to strike Wilson's testimony. The court of appeals, in its review of the record, found no motion to strike by Petitioner. <u>See</u> <u>Weathers</u>, 724 S.E.2d at 115 n.1. The court held that Petitioner had failed to preserve that issue for appeal and, therefore, did not address it. <u>See</u> <u>id.</u> (citing N.C. R. App. P. 10(a)(1)). Petitioner does not contest this finding by the trial court.

Petitioner raised this claim on direct appeal, and the North Carolina Court of Appeals denied it on the merits. Weathers, 724 S.E.2d at 117.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. "The Confrontation Clause requires that a defendant have the opportunity to confront the witnesses who give testimony against him, except in cases where an exception to the confrontation right was recognized at the time of the founding." Giles v. California, 554 U.S. 353, 357 (2008) (citing Crawford v. Washington, 541 U.S. 36, 53–54 (2004)). The common-law doctrine of forfeiture by wrongdoing is one of the exceptions to the confrontation right recognized by the Supreme Court to have existed at the time that the federal constitution was drafted and ratified. See Giles, 554 U.S. at 359. Under the doctrine of forfeiture by wrongdoing, a defendant who intentionally obtains the absence of a witness by wrongdoing forfeits the constitutional right of confrontation. See id. at 367 (citing Federal Rule of Evidence 804(b)(6), which applies only when the defendant "engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness"; Davis v. Washington, 547 U.S. 813, 833 (2006) (describing Federal Rule of Evidence 804(b)(6) as "codif[ying] the forfeiture doctrine")).

Crawford, Davis, and Giles were cases involving the admissibility of hearsay, but the principals underlying the Confrontation Clause and the forfeiture by wrongdoing doctrine are equally applicable to cases such as Petitioner's. The ultimate goal of the Confrontation Clause "is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands . . . that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Crawford, 541 U.S. at 61. "[T]the rule of forfeiture by wrongdoing . . .

extinguishes confrontation claims on essentially equitable grounds." Id. at 62 (citing Reynolds v. United States, 98 U.S. 145, 158-59 (1879).

> [W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they do have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system.

Davis, 547 U.S. at 833. "That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." Id.

In rejecting Petitioner's claim, the court of appeals cited evidence, taken from the trial court's findings of fact, tending to show that Petitioner intended to prevent Wilson from testifying. First, as they were being transported from jail to the courthouse for trial, Petitioner threatened to kill Wilson and his family. Weathers, 724 S.E.2d at 116. Second, in a telephone call to his grandmother, Petitioner repeatedly referred to Wilson as "nigger" and stated he would "straighten this nigger out." Id. Petitioner also joked during phone calls about the "slick moves" that he used to prevent Wilson from testifying. Id.

Finally, Petitioner instructed several acquaintances, by phone, to come to court to intimidate Wilson while he was testifying. Id. at 116-17. One of the parties Petitioner spoke to said he would be in court on the morning of March 2, 2011, and on that date, the trial judge observed that Wilson, who had already been hesitant and fearful on the stand, became even more emotional and "broke down" when he saw a young man "dressed in urban attire (low hanging baggie pants and hoodie) indicative of gang attire" enter the courtroom. Id. at 117. Based upon the foregoing, the appellate court reasonably could have concluded that Petitioner not only "wanted to intimidate Wilson and prevent him from testifying," but took action to achieve those aims. See id. at 117.

Moreover, the appellate court reasonably could have concluded that Petitioner's efforts were successful in inducing Wilson to refuse to testify further. In a taped interview with homicide detectives and assistant district attorneys, Wilson repeatedly expressed his concern that his life and the lives of his family members were in jeopardy. <u>Weathers</u>, 724 S.E.2d at 116. The trial court described Wilson as "shaking" during his direct examination on February 28, 2011 and "distraught" within a few minutes of returning to the stand on March 2, 2011, putting his head down on the witness stand and crying. <u>Id.</u> at 115. The record also indicates that Wilson's breakdown on the stand and subsequent statements that he did not want to testify any further coincided with the appearance in court of a young man "dressed in urban attire (low hanging baggie pants and hoodie) indicative of gang attire." <u>Id.</u> at 117. These facts, combined with Petitioner's threats to kill Wilson and his family, provided ample evidence from which the state courts could infer that Petitioner's wrongdoing caused Wilson to refuse to testify.

As indicated previously, this Court must presume that the state court's findings of fact are correct, unless they are rebutted by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1). Here, Petitioner makes no effort to challenge any of the facts upon which the state courts based their determinations that Petitioner intended to prevent Wilson from testifying and that Wilson refused to testify because of Petitioner's wrongdoing. Furthermore, the trial court used a "clear, cogent, and convincing evidence" standard of review to determine that the forfeiture of wrongdoing exception applied, which benefited Petitioner more than a "preponderance-of-the-evidence" standard would have.[2] <u>Weathers</u>, 724 S.E.2d at 116 n.3.

_____

[2] In <u>Davis v. Washington</u>, the Supreme Court declined to take a position on the standard of review necessary to demonstrate forfeiture by wrongdoing but pointed out that federal courts using Federal Rule of Evidence 804(b)(6) and many state courts generally apply the preponderance-of-the-evidence standard. 547 U.S. at 835 (citations omitted).

Based upon the foregoing, this Court cannot say that the appellate court's rejection of Petitioner's confrontation clause claim resulted in a decision that was either contrary to or an unreasonable application of clearly established federal law. See § 2254(d)(1). As such, the petition will be denied and dismissed.

## IV.    ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF. No 1, is **DENIED AND DISMISSED**;

2) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: January 26, 2015

Frank D. Whitney
Chief United States District Judge

7